UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

HINTSA N.,[1]

                                Plaintiff,              Case # 20-CV-6335-FPG

v.                                              DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                Defendant.

## INTRODUCTION

Plaintiff Hintsa N. protectively applied for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act") on May 16, 2017, alleging disability beginning May 1, 2015, due to back injury, left shoulder problem, depression, and anxiety. Tr.[2] 221-22, 240. After the Social Security Administration ("SSA") denied her claim, Tr. 82, Plaintiff appeared, with counsel, at a hearing on December 17, 2018, before Administrative Law Judge Susan Smith (the "ALJ"). Tr. 39-68. Plaintiff and a vocational expert testified. On March 7, 2019, the ALJ issued an unfavorable decision. Tr. 11-22. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the SSA. Tr. 1-6. Plaintiff then appealed to this Court.[3] ECF No. 1.

The parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 10, 15. Plaintiff filed a reply. ECF No. 16. For the reasons that follow, Plaintiff's motion is DENIED, the Commissioner's motion is GRANTED., and the ALJ's decision is AFFIRMED.

---

[1] In accordance with this Court's November 18, 2020 Standing Order regarding the identification of non-government parties in social security decisions, available at https://www.nywd.uscourts.gov/standing-orders-and-district-plans, this Decision and Order will identify Plaintiff using only Plaintiff's first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 9.

[3] The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

**LEGAL STANDARD**

### I.      District Court Review

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

### II.     Disability Determination

To determine whether a claimant is disabled within the meaning of the Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of her past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of his or her age, education, and work experience. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. §§ 404.1520, 416.920.

**DISCUSSION**

**I.      The ALJ's Decision**

The ALJ analyzed Plaintiff's claim for benefits using the process described above.  At step

one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 1, 2015,

the alleged onset date.  Tr. 13.  At step two, the ALJ concluded that Plaintiff had the following

severe impairments: back dysfunction, left shoulder dysfunction, left cubital tunnel syndrome, and

depression.  Tr. 13.

At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal

any Listings impairment.  Tr. 14-15.  Next, the ALJ determined that Plaintiff retained the RFC to

perform light work as defined in 20 C.F.R. § 404.1567(b), except that Plaintiff can walk and stand

for four hours in an eight-hour day, occasionally reach overhead bilaterally, climb stairs and ramps,

stoop, kneel, balance, crouch, and crawl, but never climb ladders, ropes, or scaffolds.  Tr. 15.

Additionally, Plaintiff must avoid exposure to hazards like moving machinery and unprotected

heights.  Finally, Plaintiff was limited to simple, routine, repetitive tasks.  Tr. 15.

At step four, the ALJ found that Plaintiff would be unable to perform any past relevant

work.  Tr. 20.  At step five, the ALJ determined that there were jobs in the national economy that

Plaintiff could perform—such as a production solderer, electrical accessories assembler, or weight

recorder—and therefore, the ALJ concluded that Plaintiff was not disabled.  Tr. 21-22.

**II.     Analysis**

Plaintiff argues that (1) the ALJ failed to properly reconcile the opinion and diagnoses of

psychological consultative evaluator Todd Deneen, Psy. D., which the ALJ found "persuasive,"

with the RFC, and (2) the ALJ improperly weighed the opinion of Plaintiff's treating physician, Clifford Ameduri, M.D.  ECF No. 11 at 3.  The Court disagrees.

### A.      The ALJ Properly Incorporated Dr. Deneen's Opinion Into the RFC

Plaintiff first argues that the ALJ purported to find Dr. Deneen's medical opinion persuasive but then deviated from it without a proper explanation.  ECF No. 11 at 18-20.  The Court disagrees.

The ALJ properly accounted for Plaintiff's moderate limitations in sustaining concentration and performing tasks at consistent pace, Tr. 618, by limiting Plaintiff to "simple, routine, repetitive tasks," Tr. 15.  Courts in this District routinely conclude that an ALJ's "directive that plaintiff is limited to performing simple, routine tasks accommodates [a medical professional's] finding that plaintiff is moderately limited in concentration, persistence, and pace." *Arthur M. v. Saul*, No. 6:20-CV-06174-MJR, 2021 WL 2309884, at *4 (W.D.N.Y. June 7, 2021); *see Ana H. v. Comm'r of Soc. Sec.*, 19-CV-432, 2020 WL 6875252, at *10 (W.D.N.Y. Nov. 23, 2020) (RFC properly accounted for plaintiff's moderate limitations in concentration, persistence, and pace by limiting her to simple, routine, and repetitive tasks); *Broadbent v. Saul*, 3:18-CV-02127, 2019 WL 4295328, at *5 (D. Conn. Sept. 11, 2019) ("Courts routinely find that a claimant who has moderate limitations in memory and concentration can perform simple routine, tasks [sic]."); *Johnson v. Berryhill*, 17-CV-00684, 2018 WL 4539622, at *6 (W.D.N.Y. Sept. 21, 2018) (explaining that an RFC limitation to simple, routine tasks accounted for claimant's "difficulties in maintaining attention, concentration, performing complex tasks, and learning new tasks").  Accordingly, the ALJ's RFC limiting Plaintiff to simple, routine, and repetitive tasks accounted for and incorporated Dr. Deneen's opinion—which the ALJ found persuasive—that Plaintiff would have moderate limitations in concentration, production, and pace.

**B.      The ALJ Properly Weighed the Opinion of Dr. Ameduri, Plaintiff's Treating Physician**

Next, Plaintiff argues that the ALJ erred in weighing two opinions from Plaintiff's treating physician, Dr. Amedrui, under the SSA's new rules.  Again, the Court disagrees.

"When determining a claimant's RFC, an ALJ must evaluate every medical opinion received, '[r]egardless of its source.'"  *Anna T. v. Comm'r*, No. 19-CV-1524-LJV, 2021 WL 810014, at *2 (W.D.N.Y. Mar. 3, 2021) (citing 20 C.F.R. § 404.1527(c)).  "[B]efore an ALJ may deny a claimant's application, the ALJ must confront the evidence in the claimant's favor and explain why it is was rejected."  *Id.* (citation, internal quotation marks, and alterations omitted).

"The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded."  *Raymond M. v. Comm'r*, No. 5:19-CV-1313 (ATB), 2021 WL 706645, at *4 (N.D.N.Y. Feb. 22, 2021).  "According to the new regulations, the Commissioner 'will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion."  *Id.* (internal quotation marks omitted); (*Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules")*, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c(a), 416.920c(a)).  "Instead, the Commissioner must consider all medical opinions and 'evaluate their persuasiveness' based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and 'other factors.'"  *Raymond M.*, 2021 WL 706645, at *4 (citing 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c)).  "The two most important factors for determining the persuasiveness of medical opinions are consistency and supportability."  *Id.* (internal quotation marks omitted).

The new regulations "eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion."  *Id.*  But "the ALJ must

explain how he [or she] considered the 'supportability' and 'consistency' factors for a medical source's opinion." *Michelle K. v. Comm'r of Soc. Sec.*, No. 19-CV-1567, 2021 WL 1044262, at *4 (W.D.N.Y. Mar. 19, 2021); *see* 20 C.F.R. § 404.1530c(b)(2).  "The ALJ may—but is not required to—explain how he [or she] considered the remaining factors." *Id.*

Here, Plaintiff takes issue with the ALJ's applications of these principles to two of Dr. Ameduri's opinions.  On April 11, 2016, Dr. Ameduri opined that Plaintiff could only occasionally lift and carry up to 10 pounds.  Tr. 273.  Plaintiff could sit for 1 hour at a time without interruption, stand and walk for 15 minutes at a time without interruption, sit for 8 hours in a day, and, confusingly, stand and walk for only 1 minute a day.[4]  Tr. 274.  Dr. Ameduri opined that Plaintiff would need to stand or walk for 1-5 minutes in between periods of sitting and would need to walk 10-15 feet at a time.  Tr. 275.  According to Dr. Ameduri, Plaintiff could occasionally reach with his right and left hands but could never balance, stoop, kneel, crouch, crawl, or work from unprotected heights or with mechanical parts.  Tr. 277-78.  However, Dr. Ameduri opined that Plaintiff could perform most activities of daily living, like shopping, preparing a meal, and caring for herself, and could travel without a companion, sort paper files, climb a few steps, and walk a block at a reasonable pace on rough or uneven surfaces.  Tr. 279.

Dr. Ameduri produced a similar opinion on November 14, 2018.  Tr. 620-26.  Again, Dr. Ameduri opined that Plaintiff could only occasionally lift and carry up to 10 pounds.  Tr. 620. However, Dr. Ameduri indicated that Plaintiff could only sit for 30 minutes at a time and stand and walk for 15 minutes at a time.  Tr. 621.  Plaintiff could again sit for eight hours in a day and stand and walk for 1 hour each day.  Tr. 621.  The remaining sections of Dr. Ameduri's 2018

---

[4] The Court assumes that Dr. Ameduri intended to indicate one hour rather than one minute.

opinion mirror his 2016 opinion, including that Plaintiff retained the ability to perform multiple activities of daily living.  Tr. 622-26.

The ALJ found Dr. Ameduri's opinions to be "generally unpersuasive."  Tr. 19.  The ALJ determined that Dr. Ameduri's functional opinions were not supported or consistent with Plaintiff's treatment records indicating good strength and intact gait, or Dr. Ameduri's opinion regarding Plaintiff's abilities to shop, travel without assistance, walk a block at a reasonable pace, prepare meals, perform personal hygiene, and handle papers and files.  Tr. 19-20.  However, the ALJ did incorporate Dr. Ameduri's opinions with respect to climbing, overhead reaching, some postural limitations, and avoiding hazards.  Tr. 19-20.

Substantial evidence supports the ALJ's treatment of Dr. Ameduri's opinions.  While it is true that Plaintiff had a long treating relationship with Dr. Ameduri, his opinions are neither consistent with the record nor supported by it.  Indeed, Dr. Ameduri opined that Plaintiff could perform a host of activities of daily living, such as shopping, walking a block on an uneven surface, traveling, and bathing herself.  These activities are inconsistent with Dr. Ameduri's opinion that Plaintiff could not lift more than 10 pounds; sit for more than 30 minutes at a time; stand or walk for more than 15 minutes at a time; and walk and stand for more than one hour a day.  Tr. 621.

Dr. Ameduri's own treatment notes also do not support such significant limitations.  On multiple occasions, Dr. Ameduri observed Plaintiff's normal gait and full muscle strength in her arms and legs.  Tr. 544, 551, 554, 555, 558, 562, 566, 792, 839, 850, 858.  These observations are inconsistent with Dr. Ameduri's opinion that Plaintiff could never lift more than 10 pounds and that she could not walk or stand for more than one hour per day.

Finally, Dr. Ameduri's opinions are not supported by the rest of the record.  In March 2016, Daniel Carr, M.D., an orthopedic surgeon, re-evaluated Plaintiff.  Dr. Carr acknowledged that

Plaintiff had a "small L4-5 disc protrusion" but noted that it "had improved between the two MRIs." Tr. 420.  He questioned the origin of Plaintiff's symptoms, noting that "[t]here is nothing about that that would be expected to give her any radicular complaints." Tr. 420.  He concluded that she could return to work, noting only, with respect to her back issues, that he "would simply recommend not running, jumping, and no repetitive lifting more than 40 pounds." Tr. 420.  Moreover, treatment notes from occupational medicine repeatedly indicate that Plaintiff can lift no more than *20 pounds*, without additional standing and walking limitations. Tr. 392, 395, 413, 416.  These notes simply do not support Dr. Ameduri's restrictive opinions.

Similarly, the tests sprinkled throughout the record do not support Dr. Ameduri's opinions. In August 2016, an MRI indicated that Plaintiff had only "minimal disc bulging" and "[n]o significant spinal or foraminal stenosis." Tr. 535.  Several months later, in November 2017, a doctor observed "[m]ild cervical spine degenerative changes" but "no significant prevertebral soft tissue edema" and "[n]o acute osseous abnormality." Tr. 537.  Plaintiff's left shoulder displayed no fracture or dislocation. Tr. 538.  As late as October 2018, MRIs revealed only "mild" disc bulging but "[m]inimal cervical spine degenerative changes" and no significant herniation. Tr. 659-60.  Again, because Dr. Ameduri's opinions are not supported by or consistent with these test results, the ALJ did not err by discounting Dr. Ameduri's opinions pursuant to the SSA regulations.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for judgment on the pleadings, ECF No. 10, is DENIED, the Commissioner's motion for judgment on the pleadings, ECF No. 15, is GRANTED, and the ALJ's decision is AFFIRMED.  The Clerk of Court shall enter judgment and close this case.

IT IS SO ORDERED.

Dated: August 16, 2021
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York